UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**GLENN D. ODOM, II**                                                        **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 5:12CV-P124-R**

**DR. STEVE HILAND** *et al.*                                              **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

    *Pro Se* Plaintiff, Glenn D. Odom, II, proceeding *in forma pauperis*, has filed an amended

complaint (DN 25).[1]  This matter is before the Court for screening pursuant to 28 U.S.C.

§ 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).[2]  For the reasons set forth

below, the following claims brought under 42 U.S.C. § 1983 will proceed: (1) the individual

capacity claims against Defendants Chanin and Steve Hiland for deliberate indifference to

Plaintiff's serious medical need in violation of the Eighth Amendment; and (2) the claim against

Defendant Crall in his official capacity for prospective injunctive relief alleging an

unconstitutional informal Kentucky State Penitentiary (KSP) policy of denying African

American inmates in segregation examinations and treatment given to Caucasian inmates.  All

other claims and Defendants will be dismissed from this action.

---

    [1]The Court notes that the amended complaint supercedes and replaces the original complaint.

    [2]Attached to the amended complaint are exhibits marked A-ZZ.  The Court notes that for
purposes of initial review, the Court is not required to wade through lengthy exhibits to find support for
Plaintiff's claims.  *See Jinadu v. Fitzgerald*, No. 99-4259, 2000 WL 1359640, at *3-4 (6th Cir. Sept. 15,
2000) ("The district court's duty to construe Jinadu's pro se pleadings liberally did not obligate it to
analyze attachments to Jinadu's complaint in order to speculate about the claims Jinadu may be
attempting to bring."); *Young Bey v. McGinnis*, No. 98-1930, 1999 WL 776312, at *1 (6th Cir. Sept. 23,
1999) ("[A]t the conclusion of each section, [the plaintiff] refers the court to an attachment consisting of a
minimum of fifty pages.  The district court's duty to construe Young Bey's pro se pleadings liberally did
not obligate it to analyze attachments to Young Bey's complaint in order to speculate about the claims
Young Bey may be attempting to bring.").  It is Plaintiff's responsibility to allege the facts supporting his
claims in the body of his pleading.

**I.**

Plaintiff brings this action against the following five Defendants: (1) Dr. Steve Hiland, a medical doctor at the Kentucky State Penitentiary (KSP); (2) Chanin Hiland, presently a nurse practitioner at Western Kentucky Correctional Complex (WKCC);[3] (3) Doug Crall, the Medical Director for the Kentucky Department of Corrections (KDOC); (4) Terri Jones, a nurse at KSP; and (5) Randy White, the Warden of KSP.  Plaintiff sues each Defendant in his or her individual capacity.  In addition, he sues Defendant Crall in his official capacity also.  The relief Plaintiff seeks is compensatory damages, punitive damages, various kinds of injunctive and declaratory relief, recovery of the costs of this action, and additional relief that the Court deems "just, proper, and equitable."

In his complaint Plaintiff alleges the following claims: (1) deliberate indifference to his serious medical needs under 42 U.S.C. § 1983; (2) racial discrimination under 42 U.S.C. § 1981(c); (3) violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101; (4) violation of the Rehabilitation Act (RA), 29 U.S.C. § 794; and (5) negligent and intentional infliction of emotional distress in violation of 42 U.S.C. § 1985(3) and (4).

Plaintiff alleges that he has an ongoing problem with blood dripping from his penis.  He states that he sustained an injury to his scrotum on December 8, 2011, which "may or may not be the cause of his penis dripping blood."  Plaintiff states that he "may have cancer, a hernia, bleeding ulcer, or a bladder/kidney infection."  He "does not know the cause of the bleeding and pain and Dr. Steve Hiland simply (and cleary) does not care to find out."  Thereafter, Plaintiff

---

[3]According to Plaintiff, Chanin Hiland was formerly at KSP.  According to the complaint Defendants Steve and Chanin Hiland are married to each other.  Plaintiff states that "Steve Hiland succeeded his wife Chanin Hiland after her termination from K.S.P. for refusing inmates adequate medical treatment."

breaks his complaint into sections in which he addresses the alleged wrongful allegations against four of the Defendants[4] and sets forth the basis upon which he alleges racial and disability discrimination.[5]

### Chanin Hiland

As to Defendant Chanin Hiland, Plaintiff states that he stopped her on March 20, 2012, during segregation sick call rounds and told her that "his penis is dripping blood."  According to Plaintiff, Defendant Chanin Hiland did not ask him any questions about his problem nor did she perform any type of physical examination.  However, three hours later an "LPN gave plaintiff a urine test which the results were negative."  Plaintiff states that he filed a grievance about this situation because he had not been dripping blood for "several days."  He contends that had Defendant Chanin Hiland asked him some questions about his symptoms she would have found this out and concluded that a urine test was unnecessary because it would "show no signs of blood."  According to Plaintiff, "[o]n a later date plaintiff had blood in his boxers and sheets and stopped Chanin Hiland to show her the bleeding.  Chanin Hiland then carelessly kept walking and stated 'theres nothing wrong with you in that area.'"  Plaintiff states that Defendants Chanin Hiland and Steve Hiland "have a continuous habit of conducting no exams on segregation inmates regardless of the severity of a problem."

### Dr. Steve Hiland

According to Plaintiff he stopped Defendant Steve Hiland during a segregation round and explained that his penis was still dripping blood and he was having minor aches.  Plaintiff states

---

[4]Plaintiff fails to set forth any allegations against Defendant White in his amended complaint.

[5]The Court will set forth Plaintiff's allegations concerning the causes of action later in the legal analysis portion of the Memorandum Opinion and Order.

that Defendant Steve Hiland asked Plaintiff what was wrong and why his penis was bleeding. Plaintiff states he showed Defendant Hiland "a prior M.D.'s note recommending an ultrasound if problems continued." According to Plaintiff, Defendant Hiland responded, "I'll ask for an ultrasound but I don't know if 'they'll' approve it." Plaintiff states that on the next rounds he told Defendant Steve Hiland that he had "pain and bleeding after ejaculation." According to Plaintiff, Defendant Hiland responded, "thats perfectly normal. Trust me, I've been doing this for over 30 years." Plaintiff states that the following week he "woke from sleep with blood in his sheets and boxers"; he had Nurse Scott Tebow document this occurrence. Subsequently, Plaintiff states that he "began to show Dr. Steve Hiland blood in his underwear and sheets and Dr. Hiland would make comments such as 'drink more water' and 'I'm sick of this guy.'" Plaintiff continues, "After many occurances of showing Steve Hiland actual blood, nurses documenting bloody boxers and sheets, and nurse Scott Tebow, personally, going to Dr. Hiland expressing that plaintiff is in pain and is, in fact, bleeding S. Hiland refuses to treat plaintiff or give him a simple examination."

According to Plaintiff, on July 19, 2012, he had bloody drainage. He showed "Sgt. McGee and ofc. Davenport blood on his left thigh, blood in his uretha, bloody boxers, and also clotty blood traces in his urine." Plaintiff states that McGee and Davenport called Defendants Jones and Steve Hiland and informed them about this occurrence. Plaintiff states that Defendant Steve Hiland told McGee and Davenport that he would see Plaintiff the following day. However, according to Plaintiff, Defendant Steve Hiland "never came and refuse to log this phone call." Plaintiff states that he continued to experience pain and bleeding. According to Plaintiff he stopped Defendant Steve Hiland during segregation rounds on July 25, 2012, and

4

informed him of the pain and bleeding.  Plaintiff "held his bloody boxers up to the window and begged Dr. Hiland for treatment and pain medicine."  Plaintiff states that he also told Dr. Hiland "if I ejaculated or urinated right now you will clearly see blood."  According to Plaintiff, Dr. Hiland asked Plaintiff not do to that and walked off.  Plaintiff states that Defendant Jones responded "if you stop us one more time I'm gonna write you up!  Everytime you stop us thats $3.00."  Plaintiff states "[t]o this very day [he] is experiencing minor aches and major pains (at times), burning while urination, and his penis is still dripping blood for no apparent reason(s)."

Plaintiff contends that Dr. Hiland has been neglecting his patients for 25 years.  He further states that he has written the "Warden seeking help" and "the KY. Board of Medical Licensure seeking help."

### Doug Crall

As to this Defendant, Plaintiff states that he has filed many grievances and appealed many grievances in which he expressed that Defendants Chanin Hiland and Steve Hiland "are refusing to pull inmates out of their cells just because they are housed in segregation."  Plaintiff "also explained that some inmates are expressing major problems and both Hilands are relentlessly refusing to pull them out of their cells.  This is being done to save time and many inmates are suffering due to this informal policy."  According to another section of the complaint, Plaintiff alleges that Defendants Steve and Chanin Hiland "are doing for whites (and others) but not doing for blacks."  Further, according to the complaint, the African American inmates in segregation are not pulled from their cells to be examined and treated whereas the Caucasian inmates in segregation are taken out of their cells, examined, and treated.  Plaintiff contends that Defendant Crall has knowledge of Plaintiff's problem with his penis and

5

knowledge that "inmates have died at the hands of Chanin and Steve Hiland," yet he has upheld this informal policy of not pulling the African American inmates in segregation out of their cells to be examined and treated.  Plaintiff contends that this informal policy is against "K.S.P policies and C.P.P policy."

**Terri Jones**

Plaintiff states that Defendant Jones was "well aware that plaintiff's penis was dripping blood."  According to Plaintiff, Defendant Jones refused to document "seeing plaintiff's bloody boxers and sheets" and "retaliated against plaintiff and threatened to write him up if he continued to complain about his bleeding."

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604.  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

 "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers*, *USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**III**.

### A.  42 U.S.C. § 1983 Claims

#### 1. Defendant White

Although Plaintiff names Randy White as a Defendants in this action and states he sues him in his individual capacity, Plaintiff fails to set forth any allegations against him.

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 2011) (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'")

7

(quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).  To state a claim for

relief, Plaintiff must show how each Defendant is accountable because that Defendant was

personally involved in the acts about which Plaintiff complains.  *Rizzo v. Goode*, 423 U.S. 362,

375-77 (1976); *see Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (stating "officials are

personally liable for damages under [§ 1983] 'only for their own unconstitutional behavior'")

(quoting *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)).

As to any § 1983 claim against Defendant White, Plaintiff fails to connect the alleged

wrongdoing to this Defendant.  Accordingly, the § 1983 claim against him will be dismissed

from this action.

### 2. Defendant Crall

Plaintiff states that he is suing Defendant Crall in both his individual and official

capacities.  According to Plaintiff, Plaintiff repeatedly stated, in grievances that were reviewed

by Defendant Crall, that Defendants Steve and Chanin Hiland refuse to pull inmates in

segregation out of their cells to examine and treat them.  Plaintiff also alleges in his complaint

that Defendants Steve and Chanin Hiland pull the Caucasian inmates out of their cells for

examination and treatment, but do not pull the African American inmates out of their cells for

examination and treatment.  Plaintiff alleges that Defendant Crall has taken no action to correct

this allegedly unconstitutional behavior and has upheld this practice as an informal KSP policy.

### a. Individual Capacity Claim

The doctrine of *respondeat superior*, or the right to control employees, does not apply in

§ 1983 actions to impute liability onto supervisors.  *Monell v. Dep't of Soc. Servs. of the City of*

*N.Y.*, 436 U.S. 658, 691 (1978); *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009);

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Additionally, "simple awareness of employees' misconduct does not lead to supervisor liability."  *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)).  "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983."  *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d at 300).  Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. at 676; *see Shehee v. Luttrell*, 199 F.3d at 300 (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d at 206.  To state a claim for relief, Plaintiff must show how each Defendant is accountable because that Defendant was personally involved in the acts about which Plaintiff complains.  *Rizzo v. Goode*, 423 U.S. at 375-76.

Here, Plaintiff's § 1983 claim against Defendant Crall in his individual capacity is based on his denial of Plaintiff's grievances and failure to take the action Plaintiff sought.  Nothing in the complaint sets forth any action taken on the part of Defendant Crall or shows how this Defendant was personally involved in the alleged wrongful conduct.  Thus, as to the § 1983 claim, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Crall in his individual capacity.

### b.  Official Capacity Claim

Plaintiff's § 1983 claims against Defendant Crall in his official capacity for money damages and declaratory relief fail because they are barred by Eleventh Amendment immunity.

9

Under the Eleventh Amendment to the U.S. Constitution,[6] a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it.  *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).  The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)); *see Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 WL 37824, at *2 (6th Cir. Mar. 19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985.").  The Eleventh Amendment similarly bars the damages claims against state officials sued in their official capacity.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *McCrary v. Ohio Dep't Human Servs.*, No. 99-3597, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency and its employees in their official capacities for damages barred by Eleventh Amendment immunity).

---

[6]The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."  *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

Plaintiff sues Defendant Crall in his official capacity.  He identifies this Defendant as the Medical Director for the KDOC.  As such, the official capacity claims for money damages and declaratory relief against him are barred and will be dismissed from this action.

However, to the extent Plaintiff sues Defendant Crall in his official capacity for prospective injunctive relief, Plaintiff's claim alleging an informal KSP policy of removing Caucasian inmates from segregation for medical examination and treatment but not removing African American inmates for medical examination and treatment will proceed.  *See McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000) (finding that "[t]he district court correctly determined that the Eleventh Amendment permits prospective injunctive relief but not damage awards, for suits against individuals in their official capacities under 42 U.S.C. § 1983").

### 3.  Defendant Jones

It appears that Plaintiff is attempting to assert a § 1983 retaliation claim against Defendant Jones.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*

Plaintiff alleges that the protected conduct in which he engaged was seeking medical treatment.  Plaintiff does have a constitutionally protected right to be free from deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

Plaintiff alleges that the adverse actions taken against him were Defendant Jones's threat to write him up if he continued complaining about his medical problem and Defendant Jones's

11

refusal to document that she saw Plaintiff's bloody boxers and sheets.  Not every action is constitutionally cognizable.  *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X v. Blatter*, 175 F.3d at 396.  "There is, of course a de minimis level of imposition with which the Constitution is not concerned."  *Ingraham v. Wright*, 430 U.S. at 674.  The adverse action necessary to state a constitutional violation must be such that it would "'deter a person of ordinary firmness' from the exercise of the right at stake."  *Thaddeus-X v. Blatter*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).  This standard is an objective inquiry which is flexible enough to accommodate the various circumstances in which retaliation claims arise and capable of screening the most trivial of actions.  *Thaddeus-X v. Blatter*, 175 F.3d at 398.  The law is clear that verbal harassment and minor threats are not adverse actions that would deter a person of ordinary firmness.  *See Thaddeus-X v. Blatter*, 175 F.3d at 398 (stating that "certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations . . ."); *Smith v. Craven*, No. 01-5634, 2003 WL 1465396, at *6 (6th Cir. Mar. 19, 2003) (failing to find that verbal harassment and minor threats were adverse actions that could deter a person of ordinary firmness from engaging in protected conduct); *Carney v. Craven*, No. 01-6270, 2002 WL 1315605, at *2 (6th Cir. June 14, 2002) (failing to find that verbal harassment and minor threats were adverse actions that could deter a person of ordinary firmness from engaging in protected conduct).

Accordingly, Plaintiff's § 1983 claim against Defendant Jones will be dismissed from this action.

12

### 4.  Defendants Chanin Hiland and Steve Hiland

As to Defendant Chanin Hiland and Steve Hiland, the Court will allow the § 1983 claims for deliberate indifference to Plaintiff's complaints regarding pain and blood dripping from his penis to proceed against them in their individual capacities.

### B.  *42 U.S.C. § 1981 Claim*

In his complaint Plaintiff alleges a claim under 42 U.S.C. § 1981 for racial discrimination. Title 42 of the United States Code, Section 1981 states in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other . . . The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(a) & (c).  Plaintiff's § 1981 claim fails because it is clear that 42 U.S.C. § 1983 is the exclusive mechanism for bringing suits against state actors for violation of rights guaranteed by § 1981.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) (holding that § 1983 provides the exclusive remedy for damages for the violation of rights guaranteed by § 1981 when a state actor is the alleged violator); *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (concluding that "§ 1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor acting in his individual capacity"); *Grinter v. Knight*, 532 F.3d at 577 ("§ 1983 provides an exclusive remedy for violations against state actors sued in their official capacities.  An official capacity lawsuit against . . . a state actor, for constitutional violations, such as race discrimination, cannot be brought under § 1981.").

Accordingly, the § 1981 claim will be dismissed from this action.

13

*C.  Americans with Disability Act and Rehabilitation Act Claims*

Plaintiff also brings claims under the ADA and the RA against Defendants Steve Hiland and Chanin Hiland.  Plaintiff bases these claims on a statement he contends that Defendant Chanin Hiland made in response to a grievance he filed.  According to Plaintiff and the exhibits to his complaint, Defendant Chanin Hiland was a witness to Plaintiff's entry interview when he was transferred to KSP from Eastern Kentucky Correctional Complex.  Regarding that interview, Defendant Chanin Hiland stated, in part, that "[plaintiff] also did not have any idea when asked, who his next of kin was and blankly stared when Terri Jones, RN, asked him if the name listed in the EMR was his sister."  Based on this statement, Plaintiff states that Defendant Chanin Hiland "assumed plaintiff was slow and mentally retarded."  Plaintiff thus concludes that "both Hilands lack of treatment, care, and examinations towards plaintiff Odom is based on his 'mental disability.'  Such 'retardation' has, obviously, caused both Hilands to completely ignore plaintiff's's serious and painful condition."

Title II of the ADA states as follows: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, the Rehabilitation Act states:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).  Plaintiff must show three elements to establish a violation of the ADA: (1) that he is a "qualified individual with a disability"; (2) that he was "excluded from

14

participation in or denied the benefits of a public entity's services, programs, or activities"; and (3) that he was excluded or denied benefits "by reason of such disability." *Weinreich v. Los Angeles Cnty. Metro. Trans. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). In order to establish a violation of the RA, in addition to these three elements, Plaintiff must show that the program or activity receives federal funds. *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 841 (6th Cir. 1996).

Plaintiff has failed to set forth any facts to support that he is a qualified individual with a disability or that he was excluded from receiving medical care by reason of such disability. The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Defendant Chanin Hiland's statement, that Plaintiff "also did not have any idea when asked, who his next of kin was and blankly stared when Terri Jones, RN, asked him if the name listed in the EMR was his sister," falls far short of stating facts showing that Plaintiff had a mental impairment that substantially limits a major life activity or that he was regarded as having such an impairment. Further, Plaintiff's assertion that he was denied medical care and treatment because of a disability is unsupported by any facts. Plaintiff relies solely on unsupported conjecture and assumption to connect any alleged disability to his alleged denial of medical treatment. . Plaintiff's conclusory allegations are not entitled to the assumption of truth. *See Abner v. Focus: Hope*, 93 F. App'x 792, 793 (6th Cir. 2004) (stating that the court is not "required to accept non-specific factual allegations and inferences or unwarranted legal conclusions"). These conclusions are not supported by factual allegations that would "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. at 679.

15

There is an additional reason that Plaintiff's ADA and RA claims must be dismissed. The ADA and RA do not apply to the individual Defendants in this case. *See Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007) ("We have held repeatedly that the ADA does not permit public employees or supervisors to be sued in their individual capacities."); *Miller v. King*, 384 F.3d 1248, 1276 (11th Cir. 2004) (concluding that "§ 12132 does not provide for claims against individuals in their individual capacities"), *vacated on other grounds*, 449 F.3d 1149 (11th Cir. 2006); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials"); *Grzan v. Charter Hosp. of Northwest Ind.*, 104 F.3d 116, 119-20 (7th Cir. 1997) (holding that a claim against an individual defendant who was not the recipient of federal funds but the employee of an organization that was a recipient of federal funds failed); *Gallagher v. Croghan Colonial Bank*, 89 F.3d 275, 278 (6th Cir. 1996) (noting that "the coverage of the Rehabilitation Act does not follow federal aid past the intended recipient to those who merely derive a benefit from the aid or receive compensation for services rendered pursuant to a contractual arrangement").

Accordingly, Plaintiff's ADA and RA claims will be dismissed from this action.

**D.  42 U.S.C. § 1985 Claim**

In his complaint, Plaintiff states that he is alleging a claim under "42 U.S.C. sec. 1985 (3) negligent infliction of emotional distress, and (4) intentional infliction of emotional distress." Title 42 of the United States Code, Section 1985 does not contain a subsection four nor does it involve the negligent or intentional infliction of emotional distress.  In a separate section of his complaint, Plaintiff indicates that he wants this Court to exercise supplemental jurisdiction over his state law claims. The Court concludes that Plaintiff is attempting to allege a claim under

16

42 U.S.C. § 1985(3) and separate state law claims for negligent and intentional infliction of emotional distress.  The state law claims will be addressed below in a separate section of this Memorandum Opinion and Order.

Title 42 of the United States Code, Section 1985 states in pertinent part as follows:

> (3) If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

In order to prove a claim of conspiracy in violation of 42 U.S. C.§ 1985, Plaintiff must prove: (1) a conspiracy of two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection or equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or the deprivation of any right or privilege of a United States citizen.  *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996)*; Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994); *Hayes v. Allstate Ins. Co.*, 95 F. Supp. 2d 832, 836 (W.D. Tenn. 2000).  For a claim under § 1985(3), Plaintiff must also show that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Dunn v. State of Tenn.*, 697 F.2d 121, 124 (6th Cir. 1982).  "A § 1985(3) complaint must 'allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action.'" *Ctr. for Bio-Ethical Reform v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992)).

17

Moreover, to state a claim for conspiracy under 42 U.S.C. § 1985, there must be specific factual allegations showing the existence of the conspiracy as well as allegations that the Defendants acted with the specific intent to deprive Plaintiff equal protection or equal privileges and immunities; conclusory allegations unsupported by material facts are insufficient to state a claim. *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012) (noting that "'conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim'") (quoting *Guitierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *Brooks v. Am. Broad. Cos., Inc.*, 932 F.2d 495, 499 (6th Cir. 1991) (finding that the § 1985 claim failed because "the allegations were too vague and conclusory"); *Azar v. Conley*, 456 F.2d 1382, 1384 (6th Cir. 1972) ("In order to state a claim for relief under 42 U.S.C. § 1985, there must be specific allegations showing the existence of a conspiracy.  General and conclusory allegations of conspiracy are not enough.").

In the present case, Plaintiff has not alleged specific factual allegations sufficient to state a § 1985 conspiracy claim.  Without such factual allegations, his § 1985(3) conspiracy claim fails and will be dismissed.

**E. State-Law Claims**

The Court will also construe the complaint as alleging state law claims for negligent and intentional infliction of emotional distress.

Under Kentucky law, in order to make out a case for either outrage/intentional infliction of emotional distress or negligent infliction of emotional distress, Plaintiff's emotional distress must be severe or serious.  *Osborne v. Keeney*, Nos. 2010-SC-000397-DG and 2010-SC-000430-DG, 2012 WL 6634129, at *9 (Ky. Dec. 20, 2012) (eliminating the physical impact requirement for negligent infliction of emotional distress claims, but requiring that the emotional injury must

18

be severe or serious); *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791 (Ky. 2004)

(recognizing that there is a high threshold necessary to make out a prima facie case of intentional

infliction of emotional distress/outrage, *i.e.*, "that the conduct at issue must be a deviation from

all reasonable bounds of decency and is utterly intolerable in a civilized community" and that the

conduct must be "extreme and outrageous") (quotations omitted). "A 'serious' or 'severe'

emotional injury occurs where a reasonable person, normally constituted, would not be expected

to endure the mental stress engendered by the circumstances of the case. Distress that does not

significantly affect the plaintiffs everyday life or require significant treatment will not suffice."

*Osborne v. Keeney*, 2012 WL 6634129, at *9. Plaintiff's complaint is void of any allegations

regarding mental distress he has suffered. Reading the complaint generously construed in

Plaintiff's favor, as the Court must, Plaintiff, at best, has made only conclusory and factually

unsupported allegations that Defendants' alleged conduct caused him to suffer mental distress.

Such "'naked assertion[s]' devoid of 'further factual enhancement,'" *Ashcroft v. Iqbal*, 556 U.S.

at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, 557), are insufficient to state a claim

for negligent or intentional infliction of emotional distress.

The Court will dismiss Plaintiff's claims for negligent infliction of emotional distress and

outrage/intentional infliction of emotional distress for failure to state a claim upon which relief

can be granted.

## IV.

**IT IS ORDERED** that the following claims brought under 42 U.S.C. § 1983 will

proceed: (1) the individual capacity claims against Defendants Chanin and Steve Hiland for

deliberate indifference to Plaintiff's serious medical need in violation of the Eighth Amendment;

and (2) the claim against Defendant Crall in his official capacity for prospective injunctive relief

19

alleging an unconstitutional informal KSP policy of denying African American inmates in segregation examinations and treatment given to white inmates.

**IT IS ORDERED** that **all other claims are DISMISSED**.  As all claims are dismissed against Defendants Terri Jones and Randy White, the Clerk of Court is **DIRECTED** to terminate them as a party to this action.

The Court passes no judgment on the merits or ultimate outcome of this case.  The Court will enter a separate Scheduling Order governing the development of the continuing claims.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.003