UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00124-GNS

GLENN D. ODOM, II                                                                                              PLAINTIFF

v.

STEVE HILAND, et al.                                                                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 89), Plaintiff's Motion for Summary Judgment (DN 90), Defendants' Motion for Sanctions (DN 108), and Plaintiff's Motion for Sanctions (DN 110). These matters are ripe for adjudication. For the reasons stated below, the Court **GRANTS** Defendant's Motion for Summary Judgment, and **DENIES** Plaintiff's Motion for Summary Judgment.

### I.     BACKGROUND

Plaintiff Glenn D. Odom, II's ("Odom") is an inmate at the Kentucky State Reformatory (Notice of Change of Address, DN 98) who, at the time of the filing of the First Amended Complaint ("Amended Complaint"), resided in the Kentucky State Penitentiary ("KSP") where the events detailed in the Amended Complaint occurred (First Am. Compl. 1, DN 25 [hereinafter Am. Compl.]). Odom alleges that he sustained an injury to his scrotum on December 8, 2011, at the Eastern Kentucky Correctional Complex when a shield held by a Special Operations Response Team "sawed" into his genitals. (Compl. 3; Letter to Warden Philip Parker 1, DN 90-1). Odom then was transferred to the Little Sandy Correctional Center 20 days later, and eventually to KSP. (Letter to Warden Philip Parker 1).

On March 21, 2012, Defendant Chanin Hiland, APRN ("Chanin") interacted with Odom during sick call rounds. (Compl. Ex. ZZ, at 2, DN 25-52). Odom told her that he had been

dripping blood from his penis for four weeks. (Compl. Ex. ZZ, at 2). Chanin ordered a urinalysis be done that day. (Compl. Ex. ZZ, at 2). The urinalysis reflected no blood in Odom's urine. (Pl.'s Mot. for Summ. J. Ex. 1, at 51-52).

On March 27, 2012, Odom interacted with Chanin and told her that his wrists were numb. (Pl.'s Mot. for Summ. J. Ex. 1, at 9, DN 90-1). Chanin told him that there was no treatment for that specific complaint absent other symptoms. (Pl.'s Mot. for Summ. J. Ex. 1, at 9). On April 4, 2012, Odom told Chanin that his back hurt. (Pl.'s Mot. for Summ. J. Ex. 1, at 10). Chanin noted that he showed no outward signs of distress; she advised him that she could get Tylenol and aspirin from the night shift nurses. (Pl.'s Mot. for Summ. J. Ex. 1, at 10).

On April 11, 2012, Steve Hiland ("Steve") interacted with Odom during sick call rounds. (Compl. Ex. ZZ, at 3). Odom told Steve that he was bleeding from his penis when urinating and ejaculation though his urinalysis had been negative. (Compl. Ex. ZZ, at 3). Odom also stated he had pain and numbness in his genital area, and allowed Steve to review a copy of an ultrasound Odom had done at EKCC following his incident with the Special Operations Response Team. (Compl. Ex. ZZ, at 3). Steve agreed a follow-up ultrasound was needed and the progress notes "will inform Nurse Jones RN Day supervisor of ultrasound needed scheduled." (Compl. Ex. ZZ, at 3).

On May 9, 2012, Terri Jones, RN ("Jones") noted during a round of sick call in the segregation unit that Odom was complaining of blood in his underwear and bed, and that he did not know where the blood was coming from. (Pl.'s Mot. for Summ. J. Ex. 1, at 29). She noted that there were no new orders and that Odom was showing no signs of acute distress. (Pl.'s Mot. for Summ. J. Ex. 1, at 29).

On July 11, 2012, Jones recorded another sick call in the segregation unit regarding Odom, this time noting that the doctor (presumably Steve) told Odom that he was not going to order him shampoo. (Compl. Ex. Y, DN 25-25). On July 17, 2012, Odom wanted to know if he was getting special shampoo, and Jones noted that "MD told him last week to use reg shampoo. No orders for special shampoo." (Compl. Ex. FF, DN 25-32).

On July 25, 2012, at another sick call in segregation, Odom stated that he was having abdominal pain and that "if I would ejackulate noe [sic] I would be dripping blood." (Compl. Ex. Z, DN 25-26). The progress note states that Odom was standing at the door and that no visual signs of distress were noted. (Compl. Ex. Z, at 1, DN 25-26). Ultimately, Robert Wilkinson, APRN, diagnosed Odom with prostatitis on June 5, 2013, and prescribed ciprofloxacin. (Pl.'s Mot. for Summ. J. Ex. 1, at 48).

In this action, Plaintiff has asserted claims against various Defendants, and these claims include: (i) deliberate indifference to his serious medical needs under 42 U.S.C. § 1983; (ii) racial discrimination under 42 U.S.C. § 1981(c); (iii) violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, and Section 504 the Rehabilitation Act of 1973, 29 U.S.C. § 794; (iv) negligent and intentional infliction of emotional distress in violation of 42 U.S.C. § 1985(3) and (4). When the Court screened Plaintiff's allegations pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), the Court dismissed all of the claims except for the 42 U.S.C. § 1983 claim of deliberate indifference to Plaintiff's medical needs asserted against the Hilands,[1] and a claim against Defendant Doug Crall ("Crall"). (Mem. Op. & Order, DN 27). Subsequently, the Court dismissed the claim against Crall. (Mem. & Order 2, DN 84).

---

[1] In Odom's dispositive motion, he addresses other claims against the Hilands which have been previously dismissed.

## II.  JURISDICTION

Plaintiff alleges a claim arising under 42 U.S.C. § 1983.  This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

## III.  STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of any material fact that would preclude entry of judgment for the moving party as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).  Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION[2]

The parties argue that they are entitled to summary judgment on Odom's claim under 42 U.S.C. § 1983 alleging a violation of the Eighth Amendment, namely failure to provide medical treatment. The Eighth Amendment has a high standard for these types of claims. As the Sixth Circuit has noted, "[w]here prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

The deliberate indifference standard has both objective and subjective components, which the Sixth Circuit has explained as follows:

> The objective component requires an inmate to show that the alleged deprivation is "sufficiently serious." As the Supreme Court explained in *Farmer,* "[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." To satisfy the subjective component, an inmate must show that prison officials had "a sufficiently culpable state of mind." "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." Although the deliberate indifference standard "describes a state of mind more blameworthy than negligence," this standard is satisfied if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citations omitted). Based upon the Court's review of the record and the applicable law, it is unnecessary to fully analyze this claim because Odom cannot satisfy the objective component.

---

[2] In their motion, Defendants reiterated their previously unsuccessful argument that Odom's claims should be dismissed due to his failure to file a pre-trial memorandum. (Defs.' Mot. for Summ. J. 2). This Court has previously rejected that argument and will not revisit its prior ruling. (Mem. Op. & Order 2, DN 85).

Based upon the Court's review of Odom's allegations, he has essentially alleged that Defendants committed medical malpractice in failing to properly diagnosis and treat him. As this Court has noted:

> [h]owever, an "inadvertent failure to provide adequate medical care" or a "negligent [diagnoses or treatment]" does not state a valid claim of medical mistreatment under the Eighth Amendment. Similarly, a dispute over the adequacy of treatment also does not generally result in a constitutional violation. Rather, an inmate must be "exposed to [undue] suffering or the threat of tangible residual injury."

*Williams v. Simpson*, No. 5:09-CV-31-R, 2010 WL 5186722, at *4 (W.D. Ky. Dec. 15, 2010) (citations omitted)). *See also Estelle*, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . . ."); *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996) (noting that a doctor's initial failure to diagnosis a broken arm due to a lack of swelling was not unreasonable or wanton because the injury was not readily apparent).

Odom also places significant credence on the alleged delay in diagnosis and treatment. He initially reported bleeding from his penis on March 21, 2012, and the prostatitis diagnosis was made on June 5, 2013. (Compl. Ex. ZZ, at 2, DN 25-52; Pl.'s Mot. for Summ. J. Ex. 1, at 48). Significant delays in treatment alone do not arise to the standard of deliberate indifference to support this claim.[3] *See Owens v. Jones*, No. 1:06-CV-231, 2006 WL 1275396, at *1-3 (W.D. Mich. May 8, 2006) (concluding that a one-year delay in completing x-rays of a prisoner's back does not constitute an Eighth Amendment violation); *Ruff v. Health Care Adm'r*, No. 3:CV-10-

---

[3] Odom's claim must also fail because there is insufficient evidence in the record to show that he suffered any detrimental effect due to the delay in treatment. *See Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) ("[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." (internal quotation marks omitted) (quoting *Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994))).

0603, 2011 WL 1344625, at *2-4 (M.D. Pa. Apr. 8, 2011) (concluding that the two-year delay in ordering an x-ray of the prisoner's fractured ribs was "regrettable" but there was an absence of proof that there was any detrimental effect due to the delay).

While Odom attempts to portray his medical needs as being neglected by Defendants, that characterization is not consistent with the record. As outlined above, Odom had numerous interactions with medical personnel. While it is clear that the medical personnel did not address Odom's medical needs to his satisfaction, that dissatisfaction alone is not a *per se* constitutional violation. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) (citing *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982)).

For these reasons, Defendants are entitled to summary judgment on Odom's claim under 42 U.S.C. § 1983. The Court will grant Defendants' motion and deny Odom's motion.

## V. CONCLUSION

For the reasons outlined above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (DN 89) is **GRANTED**, and Plaintiff's Motion for Summary Judgment (DN 90) is **DENIED**.

A separate judgment will follow.

**Greg N. Stivers, Judge**
**United States District Court**
December 10, 2015

cc: counsel of record
Glenn D. Odom, II, *pro se*